UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| DIANNA M. WALKER, | ) | No. CV 08-4778-PLA |
| Plaintiff, | ) ) | |
| v. | ) ) | **MEMORANDUM OPINION AND ORDER** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) ) ) ) | |
| Defendant. | ) ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on July 28, 2008, seeking review of the Commissioner's denial of her application for Disability Insurance Benefits. The parties filed Consents to proceed before the undersigned Magistrate Judge on August 25, 2008, and November 3, 2008. Pursuant to the Court's Order, the parties filed a Joint Stipulation on April 17, 2009, that addresses their positions concerning the disputed issue in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## **BACKGROUND**

Plaintiff was born on April 14, 1950. [See Administrative Record ("AR") at 53.] She attended three years of college, and has past work experience as, among other things, an administrative assistant, electronics assembler, and parts lister. [AR at 66, 72.]

On February 6, 2003, plaintiff protectively filed her application for Disability Insurance Benefits,[1] alleging that she has been unable to work since December 8, 2000, due to back pain, vision loss, seizures, depression, a wrist injury, diabetes, knee pain, and asthma. [AR at 23, 42, 53-55, 65.] After her application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 38-47.] A hearing was held on May 6, 2004, at which time plaintiff appeared with counsel and testified on her own behalf. [AR at 439-69.] A vocational expert also testified. [AR at 460-68.] On July 26, 2004, the ALJ determined that plaintiff was not disabled. [AR at 22-28.] Plaintiff requested review of the hearing decision. [AR at 17-18.] The Appeals Council denied plaintiff's request for review on September 6, 2005. [AR at 5-8.]

Plaintiff then filed an action in District Court, Case No. CV 05-7242-PLA, challenging the Commissioner's decision. On February 16, 2006, the Court remanded the matter with instructions to determine if specific and legitimate reasons exist to disregard the disability opinions of Dr. Marco Garcia. [AR at 505-17.] On October 27, 2006, the Appeals Council vacated the ALJ's decision and remanded the case for further proceedings consistent with the Court's 2006 Order. [AR at 502-04.] On April 19, 2007, a second hearing was held, at which time plaintiff appeared with counsel and testified on her own behalf. [AR at 570-95.] A vocational expert also testified. [AR at 588-94.] On May 23, 2007, the ALJ determined that plaintiff was not disabled. [AR at 487-95.] Plaintiff requested review of the hearing decision. [AR at 473-74.] When the Appeals Council

---

[1] Plaintiff filed prior applications in 1995 and 2002. The ALJ did not reopen those prior claims. [AR at 22.]

1  denied plaintiff's request for review on June 18, 2008, the ALJ's decision became the final decision
2  of the Commissioner.  [AR at 470-72.]  This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257.  When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner.  Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

/
/
/

**A.    THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

/
/
/
/
/

B.   **THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial gainful activity from the alleged onset date of the disability through the date last insured.[2] [AR at 494.] At step two, the ALJ concluded that plaintiff had the following "severe" impairments: chronic pain in the back, knees and hands, and asthma. [AR at 494.] At step three, the ALJ determined that plaintiff's impairments did not meet or equal any of the impairments in the Listing. [Id.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[3] to perform light work[4] with the following limitations: occasional climbing, bending, kneeling, crouching and crawling; occasional use of the right dominant hand for handling and fingering; and avoidance of working in environments where there is concentrated exposure to dust, fumes, odors and pollutants.[5] [AR at 493-94.] At step four, the ALJ concluded that plaintiff was not capable of performing her past relevant work. [Id.] At step five, the ALJ found, based on the vocational expert's testimony and application of Medical-Vocational Rule 202.14 as a framework, that "there are a significant number of light exertion jobs existing in the national economy that [plaintiff] can do in spite of her limitations." [AR at 493-94.] Accordingly, the ALJ determined that plaintiff is not disabled. [AR at 493, 495.]

/

/

/

---

[2]   The ALJ also determined that plaintiff "last met the insured status requirements of the Social Security Act on September 30, 2003." [AR at 493.]

[3]   RFC is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[4]   Light work is defined as work involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and requiring "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b).

[5]   The ALJ also concluded that plaintiff "did not have a medically determinable mental impairment." [AR at 494.]

## V.

## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ's residual functional capacity assessment is not supported by substantial evidence. Joint Stipulation ("Joint Stip.") at 3. Specifically, plaintiff asserts that the ALJ erred in rejecting the assessment of plaintiff's treating physician, Dr. Marco Garcia. Joint Stip. at 3-6. As set forth below, the Court respectfully disagrees with plaintiff, and affirms the ALJ's decision.

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). See 20 C.F.R. §§ 404.1502, 416.927; see also Lester, 81 F.3d at 830. As a general rule, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant. See Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); see also Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)). Although the treating physician's opinion is entitled to great deference, it is not necessarily conclusive as to the question of disability. See Magallanes, 881 F.2d at 751 (citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 (9th Cir. 1989)). Where the treating physician's opinion is contradicted by another physician, the ALJ may only reject the opinion of the treating physician if the ALJ provides specific and legitimate reasons for doing so that are based on substantial evidence in the record. See Lester, 81 F.3d at 830; see also 20 C.F.R. §§ 404.1527(d), 416.927(d) (requiring that Social Security Administration "always give good reasons in [the] notice of determination or decision for the weight [given to the] treating source's opinion"); Social Security Ruling[6] 96-2p ("the notice of the determination or decision must contain

---

[6] Social Security Rulings ("SSR") do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

6

specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.").

On February 11, 2004, Dr. Garcia completed a Medical Questionnaire in which he indicated he had treated plaintiff from March, 2002, to February, 2004, seeing plaintiff approximately every 2 to 3 three months. [AR at 389-92.] He diagnosed plaintiff with multiple fractures and surgeries of the wrist, and degenerative joint disease of the knees, elbows and lumbar spine that worsens over time. [AR at 389.] He reported that plaintiff has to lie down 20 to 30 minutes during the day due to low back pain. He also reported that plaintiff suffers from depression. [Id.] Dr. Garcia limited plaintiff to 15 minutes of sitting at one time for a total of two hours in an eight-hour day, 15 minutes of standing at one time for a total of 30 minutes in an eight-hour day, 20 minutes of walking at one time for a total of 30 minutes in an eight-hour day, and no bending, stooping or fine manipulation. [AR at 390.] She could occasionally lift and carry up to 5 pounds, and can never bend, squat or climb. [Id.] Dr. Garcia restricted all activities with plaintiff's hands, legs, and feet. [AR at 391.] He opined that plaintiff could not work consistently at a sedentary job because sitting for long periods provokes plaintiff's back pain, and lifting provokes her wrist pain. [AR at 392.] Dr. Garcia anticipated that plaintiff would miss three or more days of work each month due to her condition, and stated that she requires a cane for ambulation. [AR at 392.] In reaching his conclusions, Dr. Garcia referred to the following clinical findings and test results: scars, tenderness and swelling of the arm and wrist, tenderness at the low back, x-rays, and MRI and EMG tests. [AR at 389.]

In the decision, in rejecting the opinion of Dr. Garcia, the ALJ concluded that (1) "[d]espite stating that [plaintiff] had extreme limitations in functioning, Dr. Garcia performed no diagnostic testing that would justify these limitations"; (2) "Dr. Garcia's treatment is not consistent with the extreme limitations he assesses"; and (3) "Dr. Garcia's assessment is inconsistent with the assessment of all other doctors in the file." [AR at 492-93.] As discussed below, the ALJ properly considered the opinion of Dr. Garcia.

7

As an initial matter, the Court notes that lack of objective findings, without more, is insufficient to constitute a specific and legitimate reason for rejecting the opinion of a treating physician. See Embrey v. Bowen, 849 F.2d 418, 421-23 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.") (footnote omitted). Here, the ALJ rejected the opinion of Dr. Garcia as unsupported by the objective laboratory findings, without any explanation as to how the objective findings contradict Dr. Garcia's assessment.[7] See Embrey, 849 F.2d at 421-22. However, in this case, the ALJ provided other reasons, apart from the lack of objective evidence, which are legally sufficient as a basis for the rejection of Dr. Garcia's opinion.

The ALJ's conclusion that Dr. Garcia's treatment is inconsistent with the "extreme limitations" he assessed in the Medical Questionnaire dated February 11, 2004, is supported by the record. [AR at 492.] "It is established that it is appropriate for an ALJ to consider the absence of supporting findings, and the inconsistency of conclusions with the physician's own findings, in rejecting a physician's opinion." Logan-Laracuente v. Astrue, 2008 WL 4507501, at *7 (E.D. Cal. Oct. 7, 2008) (citations omitted); see, e.g., Prosch v. Apfel, 201 F.3d 1010, 1013 (8th Cir. 2000) (a treating physician's own inconsistency may undermine his opinion and diminish or eliminate the weight given to his opinion); White v. Astrue, 2008 WL 5170442, at *5 (E.D. Wash. Dec. 10, 2008) ("Where an ALJ determines a treating physician's stated opinion is materially inconsistent with the physician's own treatment notes, legitimate grounds exist for considering the purpose for which the doctor's report was obtained and for rejecting the inconsistent, unsupported opinion.") (citing Nguyen v. Chater, 100 F.3d 1462, 1464 (9th Cir. 1996)). In addition, an ALJ may rely on the lack

---

[7] The Court notes that plaintiff's previous action in this Court, Case No. CV 05-7242-PLA, challenging the Commissioner's decision, was remanded based on the ALJ's failure "to provide legally sufficient reasons [to reject Dr. Garcia's opinion] and to explain how the 'objective factors' he listed contradict Dr. Garcia's assessment." [AR at 512.]

of more aggressive treatment as a basis for discounting the opinion of a claimant's treating physician. See Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (the ALJ properly considered the treating physician's failure to prescribe any serious medical treatment for the claimant's supposedly excruciating pain). Further, "'[a] medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling.'" Dawkins v. Bowen, 848 F.2d 1211, 1213 (11th Cir. 1988) (citation omitted); see also Odle v. Heckler, 707 F.2d 439, 440 (9th Cir. 1983) (finding of no disability affirmed where medical conditions were controlled by medication and treatment); Roth v. Shalala, 45 F.3d 279, 282 (8th Cir. 1995) ("'If an impairment can be controlled by treatment or medication, it cannot be considered disabling.'") (citation omitted); see, e.g., Hollingsworth v. Astrue, 2007 WL 2750687, at *7 (W.D. Ark. Sept. 19, 2007) (noting that the claimant had an extensive record of treatment, but was prescribed only conservative treatment for her medical condition, namely pain medications, muscle relaxers, and epidural steroid injections); Groff v. Commissioner of Social Sec., 2008 WL 4104689, at *5 (N.D.N.Y. Sept. 3, 2008) (noting that plaintiff's treating physician prescribed relatively conservative courses of treatment, such as pain medication, physical therapy, and referral to a pain clinic).

A review of the treatment record does not support Dr. Garcia's assessment of plaintiff's limitations in the Medical Questionnaire. Although Dr. Garcia treated plaintiff for an extended period and assessed plaintiff with degenerative joint disease of the knees, elbows, and lumbar spine, Dr. Garcia prescribed a generally conservative course of treatment consisting primarily of medications. [See, e.g., AR at 389, 394-96, 528, 530, 543, 546, 548, 551.] There were no surgeries performed or recommended by Dr. Garcia. Nor did Dr. Garcia recommend any form of aggressive treatment. While it appears that Dr. Garcia referred plaintiff to the orthopedic and pain clinics, there is no indication in the record that plaintiff was ever treated at either clinic.[8] Moreover,

---

[8] "In Social Security cases[,] the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983). "The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001). At the hearing on April 19, 2007, the ALJ indicated that the record would "remain open for two weeks for the submission

during the course of plaintiff's treatment, Dr. Garcia performed physical examinations of plaintiff, which were essentially normal. [AR at 394-97, 525, 528, 530, 542, 546, 548.] On August 14, 2006, Dr. Garcia noted that plaintiff is "[d]oing ok" with chronic lower back pain. [AR at 528.] On January 30, 2006, Dr. Garcia noted that plaintiff "[f]eels ok." [AR at 526.] In several progress notes, including a progress note dated February 10, 2004 (one day prior to the completion of the Medical Questionnaire by Dr. Garcia), Dr. Garcia noted that plaintiff's medical problems were "stable," and instructed plaintiff to return to the clinic for a follow up visit in two to three months. [AR at 394-96, 528, 530, 543, 546, 548, 551.] On January 30, 2007, which appears to be the date of Dr. Garcia's last progress note, Dr. Garcia noted that plaintiff's medical problems were stable, refilled her medications, and requested that she return to the clinic in four to five months. [AR at 525.] Such conservative treatment suggests that plaintiff's impairments do not rise to the level reflected in Dr. Garcia's February 11, 2004, assessment. The ALJ's characterization of Dr. Garcia's treatment as inconsistent with the extreme limitations he assessed, and limited to prescribing a large number of medications, was accurate. Given that Dr. Garcia's assessment is at odds with his treatment of plaintiff, the ALJ did not err in rejecting his opinion.

Moreover, the ALJ's conclusion that Dr. Garcia's opinion is not entitled to any weight because it "is inconsistent with the assessment of all other doctors in the file" is also supported by the record, and is a proper consideration. [AR at 493.] See 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5) (the more consistent an opinion is with the record as a whole, the more weight it will be given); see, e.g., Knight v. Chater, 55 F.3d 309, 314 (7th Cir. 1995) ("[m]edical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence.") (citation omitted). It is solely within the province of the ALJ to make credibility findings and resolve the conflicts in the medical evidence. See Andrews, 53 F.3d at 1041 (the ALJ is responsible for resolving conflicts in the evidence); see also Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982) (where medical

---

of additional records." [AR at 573.] Although plaintiff submitted additional medical records after the hearing, none of those records reflected treatment at the orthopedic clinic or the pain clinic. [AR at 525-69.]

1 reports are inconclusive, "'questions of credibility and resolution of conflicts in the testimony are
2 functions solely of the Secretary'") (quoting Waters v. Gardner, 452 F.2d 855, 858 n.7 (9th Cir.
3 1971)); Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992) ("[w]hen there is conflicting medical
4 evidence, the Secretary must determine credibility and resolve the conflict.") (citation omitted). Here,
5 in discounting the opinion of Dr. Garcia, the ALJ considered the opinions of consultative examiners
6 Dr. John Sedgh and Dr. Ursula Taylor, and the opinion of a State Agency nonexamining physician.
7 [AR at 22-24, 493.] The ALJ found that Dr. Garcia's "extreme" restrictions were inconsistent with the
8 opinions of these physicians, all of whom concluded that plaintiff could perform at the very least light
9 work with some limitations. [AR at 493.]

10 Indeed, neither the findings nor the conclusions of the consultative examiners are the same
11 as the findings and conclusions of Dr. Garcia. Although the consultative examiners assessed
12 plaintiff with some functional limitations, neither of them found plaintiff as severely limited as Dr.
13 Garcia. See Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (an examining physician's opinion
14 based on independent clinical findings that differ from the findings of a treating physician may
15 constitute substantial evidence); see also Magallanes, 881 F.2d at 751 (an examining physician's
16 opinion based on independent clinical findings can constitute substantial evidence). Rather, Dr.
17 Sedgh found, based on "formal testing and on [his] observation of [plaintiff's] spontaneous actions,"
18 that plaintiff was able to perform work at the light level of exertion with a limitation on frequent
19 manipulation on the right hand. [AR at 279-84.] Dr. Taylor, following a physical and neurological
20 examination, and diagnostic testing, found that plaintiff could perform light work with a limitation to
21 occasional postural movements except for frequent kneeling and balancing, and only occasional fine
22 fingering and gross handling due to deformity of the right wrist and history of fracture. [AR at 369-
23 74.] After a thorough review of the records, the ALJ found plaintiff capable of performing "light
24 exertion with occasional climbing, bending, kneeling, crouching and crawling, occasional use of the
25 right dominant hand for handing [sic] and fingering and with avoidance of working in environments
26 where there are [sic] concentrated exposure to dust, fumes, odors and pollutants." [AR at 494.]
27 Given that the opinions of the examining physicians regarding plaintiff's functional limitations were
28 contrary to the opinion of Dr. Garcia, it was solely within the province of the ALJ to resolve the

conflict in the medical opinions. See Matney, 981 F.2d at 1019 ("[t]he trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ.") (citation omitted); see also Allen, 749 F.2d at 579-80 (if the evidence supports more than one rational interpretation, the reviewing court must uphold the ALJ's decision and not second-guess the ALJ's choice among conflicting opinions).

Furthermore, the ALJ's reliance on the opinion of the State Agency nonexamining physician was proper. The opinion of a nonexamining physician may serve as substantial evidence when it is consistent with other independent evidence in the record. See Lester, 81 F.3d at 830-31; see also Andrews, 53 F.3d at 1041 ("reports of the nonexamining advisor need not be discounted and may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it"); Magallanes, 881 F.2d at 751-55 ("the ALJ did not rely on [the nonexamining physician's] testimony *alone* to reject the opinions of [the claimant's] treating physicians . . . .") (emphasis in original); but see Pitzer v. Sullivan, 908 F.2d 502, 506 n.4 (9th Cir. 1990) (the opinion of a nonexamining physician cannot, by itself, constitute substantial evidence that justifies that rejection of a treating physician). The opinion of the nonexamining physician is consistent with the opinions of the consultative physicians and the record as a whole.[9] Given that the nonexamining physician's opinion is supported by other evidence in the record, this opinion constitutes substantial evidence.

Lastly, plaintiff's allegation that the ALJ erred in failing to find that plaintiff suffers from a severe mental impairment is unavailing. Joint Stip. at 6. The Court rejected this same argument

---

[9] On May 8, 2002, a State Agency nonexamining physician completed a Physical Residual Functional Capacity Assessment. [AR at 305-12.] The nonexamining physician found that plaintiff could lift and/or carry 20 pounds on an occasional basis and 10 pounds on a frequent basis, stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday, and sit (with normal breaks) for a total of about 6 hours in an 8-hour workday. [AR at 306.] The nonexamining physician further found that plaintiff was unlimited (other than as shown for lift and/or carry) in her ability to push and/or pull (including operation of hand and/or foot controls), and limited in handling (gross manipulation) and fingering (fine manipulation). [AR at 306, 308.]

as unpersuasive in the previous action in this Court, Case No. CV 05-7242-PLA. [AR at 513.] As noted in the prior action, "[w]hile there are intermittent mentions in the record of plaintiff having a 'very hostile angry affect' in March, 2002 [AR at 417], anxiety in February, 2003 [AR at 406], depression in mid- to late-2003 [AR at 395, 396, 398, 399], and that plaintiff apparently was prescribed medication in this regard which helped the condition [AR at 399], there is no evidence that she received psychological or psychiatric counseling or other treatment for her alleged condition" prior to her date last insured. [AR at 513.] Indeed, during the psychiatric consultative examinations of plaintiff performed by Dr. Pedro M. Florescio and Dr. Ernest Bagner III, plaintiff expressly denied having any mental impairment. [AR at 274, 365.] Based on their examinations of plaintiff, these examining physicians found no disabling mental impairment. [AR at 274-78, 365-68.] Thus, substantial evidence supports the ALJ's conclusion that plaintiff "did not have a medically determinable mental impairment." [AR at 494.]

The ALJ summarized the facts and conflicting evidence in a detailed and thorough manner, stating his interpretations and making findings. Thus, his conclusion is entitled to deference. The ALJ provided legally sufficient reasons, based on substantial evidence in the record, for discounting the opinion of Dr. Garcia. See Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) (specific and legitimate reasons can be set forth by a "detailed and thorough summary of the facts and conflicting clinical evidence, stating [the ALJ's] interpretation thereof, and making findings") (citing Magallanes, 881 F.2d at 751). Accordingly, remand is not warranted.

/
/
/
/
/
/
/
*/*
*/*

## VI.

## CONCLUSION

**IT IS HEREBY ORDERED** that: 1. plaintiff's request for reversal, or in the alternative, remand, is **denied**; and 2. the decision of the Commissioner is **affirmed**.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included or submitted to any online service such as Westlaw or Lexis.**

DATED: June 26, 2009

                                      PAUL L. ABRAMS
                       UNITED STATES MAGISTRATE JUDGE